# COURT OF ERRORS AND APPEALS

### OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### JUNE TERM, 1893.

---

JOHN BARBOUR, appellant,

*v.*

MARGARET BARBOUR, respondent.

1. If a parol contract relating to land, that has been in part performed, can be specifically performed, such contract must be proved to the point of demonstration.

2. The proof in this case held to be insufficient.

---

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Barbour* v. *Barbour, 4 Dick. Ch. Rep. 429.*

*Mr. Robert Adrain,* for the appellant.

*Mr. Alan H. Strong,* for the respondent.

[267]

BEASLEY, C. J.

The substance of the bill exhibited in this case is to the effect that about two years previous to this suit the respondent had proceeded for a divorce from her husband on the ground of his adultery, and that, upon his promise to amend and to convey to her a certain house in the city of New Brunswick, she had returned to his bed and board and had withdrawn her proceedings against him. This course of law is to compel the specific performance of the stipulation to convey the property thus alluded to. The defendant in his answer denies altogether the alleged contract.

It will be at once perceived that this controversy involves the inquiry, so much perplexed by judicial *dicta*, as to the extent to which that clause of the statute of frauds which declares that all contracts for the passing of any interest in lands is inoperative unless in writing, can be judicially limited. In the present instance the agreement to convey to the respondent was by parol, and the transaction could be sustained only on the ground that having performed her side of such agreement, and as she cannot be placed *in statu quo*, the statutory requirement is not applicable. In the recent case of *Lawrence* v. *Springer, 4 Dick. Ch. Rep. 289*, this court set its face against the admission of such a doctrine into our judicial system. But on the present occasion it is not at all necessary to consider this question, inasmuch as the facts before us do not show the existence of any contract on the part of the appellant to convey the lands in dispute.

We think the attempt in this direction is a signal failure. The respondent's own evidence represents her view of the transaction between herself and her husband.

It will be remembered that she had filed her bill for divorce against her husband and she alleges that he came to her and besought her to discontinue that proceeding and to return to her cohabitation with him. She further claims that as an inducement for her to return he promised to convey to her the premises in dispute. The question is whether there was a bargain to that effect.

The first thing that meets us at the threshold of this inquiry is that this respondent signed a paper which contained the terms upon which she consented to return to her husband. It is strange that this paper, so important to the proper determination of this matter, was not put in evidence, but the respondent herself proved, without objection, the contents of the instrument. These were her answers to the following questions. She said:

"I signed my name to a letter.

"*Q.* Do you know what it was?

"*A.* I talked to Mr. Barbour about dismissing the divorce case; he told me all that was done, and I was to go on just the same as I always did.

"*Q.* That is what the paper contained—an agreement on his part to settle up all costs and expenses which had been incurred, and that you were to go back and live with him?

"*A.* Yes, sir.

"*Q.* Is that so?

"*A.* Yes, sir."

There was nothing to explain or in any way to qualify this testimony.

This agreement in writing seems to have escaped all attention in the court of chancery, and yet, in my opinion, it should be deemed quite conclusive against the equity of the bill. According to its clear stipulations the respondent, on her side, agreed to consort again with her husband, and he stipulates to pay all the expenses of her suit for divorce. Upon what principle is it that this written contract can be interpolated with this momentous stipulation, that in consideration of her return to his home, and her abandonment of her litigation, he shall convey to her the land in question? It is not apparent why the usual rule with respect to the conclusiveness of agreements in writing as between the parties is not applicable. If it was the intention of this husband and wife that he was not only to pay her legal expenses but was likewise to pass over to her a title to this house and lot, how can the omission of this latter and overshadowing promise be explained?

But, even if this doctrine of estoppel should not be insisted on, nevertheless, when we look into the statements of this respondent herself, it becomes demonstrably clear, as it is deemed,

that the writing in question does contain all the bargain that, in reality, in this case was made; all beyond its stipulations belongs to the field, not of contract, but of sentiment and passion. The following are the principal narrations of the affair made by her. She says:

" He wanted me to go back with him and live with him; he pleaded and I told him no, I would not; he wanted me to dismiss the divorce case; I told him no I would not do so; he begged me, I guess, two hours.

"*Q*. To do what?

"*A*. I was to go back to live with him; he would be a different man and give up all his bad habits and he would never do so again, and he said he was very sorry for what he had done.; I told him I never would go back to him; he said, 'If you don't think I mean what I say I will turn this property over to you;' it was not for the property that I returned.

"*Q*. It was not for the property that you returned?

"*A*. It was in one sense of the word; he promised me it. ·

"*Q*. What took you back; did you go back because you thought it your duty?

"*A*. Because I thought a great deal of him, and I thought it was my duty to go back; then he said he would turn this property over to me free and clear. * * *

"*Q*. I want to know, as a matter of fact, if you said to your husband 'if you give me so much I will return to you?'

"*A*. No, sir."

Subsequently, this respondent repeats a narration of the affair in these words. She says:

" He said it in this way, 'Maggie, if you will come back with me I will be a different man and live a different life and have nothing to do with the Jillings woman.' I said, 'No, sir, I shall not go back with you.' And he said, 'If you do not think I mean what I say I will give you the home free and clear of everything; *I will give you everything that I have got.*' I said, 'All right, upon those grounds I will go back.' "

It thus appears from the respondent's statement of her own case that if she has a binding contract for the conveyance of the premises in dispute, she has likewise the same identical right to everything possessed by him. He said, " I will give you everything I have got," and it was upon that ground that she agreed to condone his offence. If what the husband said, on the occa-

Barbour *v.* Barbour.

sion referred to, was understood between these parties as an actual bargain with respect to this house and lot, then, certainly, he legally stipulated to give her everything he possessed in the world, and the only imaginable reason why this universal stipulation has not been insisted on would seem to be that such endeavor would cast a color of absurdity over the entire case.

It is deemed that it is manifest that while this appellant, in the interview between himself and his wife, to which she testifies, did, in all probability, make many extravagant protestations and promises of the general character of those described by her, that both parties fully understood that such ejaculations were not to be taken as the stipulations of a contract. Who can believe that the wife understood that her husband was to bestow upon her everything he possessed, and yet that was the agreement, if there was any contract made between them? The fact is, the transaction in question did not relate to money matters, but moved altogether in the line of sentiment and feeling, and the wife testifies that her husband pleaded with her for two hours, and that he was in tears at the time. It would be most dangerous to attempt to construct a legal contract out of the hysterical utterances of such an occasion. And it will be remembered that those decisions that maintain that a parol contract relating to land may be performed by the court after a part performance of a certain character, most strenuously insist that the proof of such contract must be of the most demonstrative character. Such proof is altogether wanting in this case, and the decree, therefore, must be reversed.

*For reversal*—The Chief-Justice, Abbett, Depue, Garrison, Magie, Reed, Van Syckel, Brown, Smith—9.

*For affirmance*—Dixon, Lippincott, Bogert, Clement—4.