## Hazel SCHICHTEL *v.* George SCHICHTEL

CA 81-42                                   621 S.W. 2d 504

Court of Appeals of Arkansas
Opinion delivered September 30, 1981

*Boyett, Morgan & Millar, P.A.,* by: *Mike Millar,* for appellant.

*Southern & James,* by: *Dennis L. James,* for appellee.

Tom Glaze, Judge. This appeal ensues from a divorce action wherein the chancery judge awarded an undivided

one-half interest in certain real property to each party, finding it was marital property even though the husband, George Schichtel, had previously deeded the property to the wife, Hazel Schichtel. On appeal, the appellant wife contends that she is sole title holder to the property by virtue of a reconciliation agreement and two deeds executed by her husband. Since the divorce decree and award of property, the appellee husband died and this appeal is now defended by the administratrix of the deceased husband's estate. Appellee argues that the chancellor correctly ruled that the subject real property was marital property, and that the trial court's decision is supported by the preponderance of evidence.

Most of the essential facts are not in dispute. The parties were married in 1963. Appellee was an alcoholic, and because of his drinking problem, the parties were often times separated during the course of their marriage. During the marriage, the parties acquired their resident property in Judsonia and a rental house in Little Rock. In March, 1977, the parties separated, and on this occasion, appellant filed for divorce. On April 20, 1977, appellee signed a reconciliation agreement which, among other things, permitted appellant to have possession of the Judsonia home, and it allowed her all rents collected on the Little Rock property. The agreement was to stay in effect if the reconciliation was unsuccessful and unless and until a court altered, amended or cancelled the agreement. Appellee also executed deeds to the Judsonia and Little Rock properties to appellant on the same date the agreement was signed, i.e., April 20, 1977. The parties then reconciled, but later separated in October, 1979, at which time appellant filed another divorce action.

The trial court granted appellant a divorce, but when it divided the parties' real property, the chancellor held that the two deeds executed on April 20, 1977, were void as a matter of law by the subsequent enactment of Act 705 of 1979, now compiled as Ark. Stat. Ann. § 34-1214 (Supp. 1981). As noted earlier, the chancellor held the subject properties were marital property under § 34-1214 and awarded each party a one-half undivided interest.[1]

---

[1]Ark. Stat. Ann. § 50-413 (Repl. 1971) in effect provides that a spouse may deed his or her entire interest to the other spouse as if the marital

We review chancery cases *de novo,* and if the chancellor is correct for any reason, we affirm the decision. *Moore* v. *City of Blytheville,* 1 Ark. App. 35, 612 S.W. 2d 327 (1981). Although we agree with the chancellor's decision and award of property, we must disagree with his reasoning and his interpretation of § 34-1214.

Section 34-1214 (B), as amended, defines "marital property" as follows:

(B) For the purpose of this statute "marital property" means all property acquired by either spouse subsequent to the marriage except:
(1) Property acquired by gift, bequest, devise or descent;
(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
(3) Property acquired by a spouse after a decree of divorce from bed and board;
(4) Property excluded by valid agreement of the parties; and
(5) The increase in value of property acquired prior to the marriage.

Appellant argues forcefully that the reconciliation agreement signed by appellee is a valid agreement between the parties under § 34-1214 (B) (4) and that it excluded each of the subject properties from being marital property. Until now, we have not been requested to recognize reconciliation agreements as an exception under our marital property law as noted in § 34-1214 (B) (4), above. We have no hesitancy in doing so, however.

The law encourages the resumption of marital relations. Since the purpose of a reconciliation agreement is to restore marital relations, it harmonizes with public policy and will be upheld. *Hanner* v. *Hanner,* 95 Ariz. 191, 388 P. 2d

---

relation did not exist between the parties to the deed. What effect, if any, Ark. Stat. Ann. § 34-1214 had on § 50-413 was not argued to or considered by the trial court. Since we dispose of this case on other grounds, it is not necessary for us to review this issue.

239 (1964); see also, Lindsey, *Separation Agreements and Ante-Nuptial Contracts,* § 71, and cases cited in 24 Am. Jur. 2d, *Divorce and Separation,* § 17. We adopt the following rule announced by the Maryland Court of Appeals in *Young* v. *Cockman,* 182 Md. 246, 34 A. 2d 428 (1943):

> We hold that a contract between husband and wife, made when they are separated for just cause, whereby the husband agrees to pay his wife a specified sum if she will resume marital relations, rests upon a valuable consideration and is enforceable.

The problem at hand comes when we attempt to determine what disposition of property did the parties intend by the signing of the agreement and the deeds on April 20, 1977. To resolve this question, we consider and apply the rule of construction stated by the Supreme Court in *Henslee* v. *Boyd,* 235 Ark. 369, 360 S.W. 2d 505 (1962), as follows:

> The two instruments were executed together, in the course of the same transaction, and should be considered as a single contract not only in the matter of interpretation, *Gowen* v. *Sullins,* 212 Ark. 824, 208 S.W. 2d 450, but also, we think, in the determination of whether rescission is proper.

Although the appellee executed deeds conveying the parties' real property to appellant, the appellee, at the same time, signed the reconciliation agreement which clearly authorized the agreement to be altered, amended or cancelled by the order of a court of competent jurisdiction. Moreover, the relevant provisions of the reconciliation agreement merely give appellant possession of the Judsonia property and the rents from the rental property "owned by the parties in Little Rock, Arkansas . . . " There is no mention of the deeds in the agreement nor did the agreement indicate that the appellant was to gain permanent control and dominion over the two properties. At the time the agreement and deeds were signed, appellant's 1977 divorce action was pending, and, in fact, the action was still pending when she filed her second divorce action in 1979.

Did the parties contemplate the court's intervention and approval of the parties' agreement? Appellee testified that he understood that after he and appellant remained together for one year, deeds were to be executed reflecting his ownership of the properties with appellant. Appellant denied any such agreement.

Property and alimony settlement agreements are analagous to reconciliation agreements. Since we have little authority in Arkansas concerning the enforceability of reconciliation agreements, we believe the line of cases involving enforceability of property and alimony agreements can be instructive here. A review of these cases is set out in *Kersh v. Kersh,* 254 Ark. 969, 497 S.W. 2d 272 (1973), wherein the court held:

> We are of the opinion that Dr. and Mrs. Kersh entered into such independent contract for the payment of alimony as was discussed in *Lively v. Lively,* 222 Ark. 501, 261 S.W. 2d 409, wherein we said:
>
>> "Appellant first contends the chancellor was without authority to modify the decree because it was based on the prior agreement of the parties. Our cases hold that where a decree for alimony or support is based on an independent contract between parties which is incorporated in the decree and approved by the court as an independent contract, it does not merge into the court's award and it is not subject to modification except by consent of the parties. *Pryor v. Pryor,* 88 Ark. 302, 114 S.W. 700, 129 Am. St. Rep. 102; *McCue v. McCue,* 210 Ark. 826, 197 S.W. 2d 938; *Bachus v. Bachus,* 216 Ark. 802, 227 S.W. 2d 439. Although a court of equity may decline to enforce payments due under an independent agreement by contempt proceedings where changed circumstances render such payments inequitable, the wife retains her remedy at law on the contract. *Pryor v. Pryor, supra.*
>
>> There is a second type of agreement in which the

> parties merely agree upon the amount the court
> should fix by its decree as alimony or support,
> without intending to confer on the wife an inde-
> pendent cause of action. This type of agreement
> becomes merged in the decree and loses its con-
> tractual nature so that the court may modify the
> decree. *Holmes* v. *Holmes,* 186 Ark. 251, 53 S.W.
> 2d 226; *Wilson* v. *Wilson,* 186 Ark. 415, 53 S.W. 2d
> 990; *Seaton* v. *Seaton,* 221 Ark. 778, 255 S.W. 2d
> 954."

In the instant case, we construe the reconciliation agreement and deeds together, and find that the parties entered into an agreement which they knew and intended to be subject to the approval of the chancery court. The clear language of the agreement so provides and totally negates any thought that the agreement was intended to confer on the appellant an independent cause of action. Under the facts of this case, we hold that the reconciliation agreement failed to effectively exclude the subject properties from our marital property law under § 34-1214 (B) (4). The trial court's decision to hold the property to be marital property is permitted by the reconciliation agreement and for that reason we affirm.

In conclusion, appellant raises a second issue, contending that a temporary order was entered by the court on March 21, 1977, and subsequent to this order the deeds were executed. Appellant argues the property is, therefore, excluded as marital property under § 34-1214 (B) (3) (Supp. 1979) as being property acquired by a spouse after a legal separation.[2] She cites no authority for the proposition that a temporary order is the same as a legal separation. We merely reject this contention by noting that Arkansas law authorizes divorce from bed and board but not legal separation.[3]

Affirmed.

---

[2]Section 34-1214 (B) (3) (Supp. 1979) was amended by Act 799 of 1981, substituting the words "divorce from bed and board" for "legal separation."

[3]*Id.* and see also Section 4 of Act 799 of 1981 and *Lytle* v. *Lytle,* 266 Ark. 124, 583 S.W. 2d 1 (1979).