199 N.J. Super. 525 (1985)
489 A.2d 1247
CAREY NICHOLSON, PLAINTIFF-APPELLANT,
v.
LINDA NICHOLSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1985.
Decided March 22, 1985.
*528 Before Judges PRESSLER, BRODY and COHEN.
Goldman & Beninson, attorneys for appellant (Arnold B. Goldman and Gary S. Beninson on the brief).
*529 Abrams and Gatta, attorneys for respondent (Norma F. Rosenbloom on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Plaintiff appeals from that portion of a divorce judgment declaring the marital home not subject to equitable distribution. Defendant acquired sole title in 1969, four years after the marriage, when plaintiff conveyed to her his interest as a tenant by the entirety. The trial court found that plaintiff is "estopped" from claiming a distributive share because, in consideration for the conveyance, defendant agreed to resume cohabitation with plaintiff and to abandon her plan to divorce him on the ground of adultery. Two of the parties' three children were born during the 12 years they lived together after the reconciliation.
The trial judge's findings and conclusions on the point are as follows:
In August of 1969, Plaintiff contacted the Defendant and requested an attempt at reconciliation. Defendant testified that she was upset and confused since evidently this was the second occasion of marital infidelity. Defendant consulted with her lawyer and then indicated to Plaintiff that if he would agree to deed the house to her, he could come back.
Defendant testified Plaintiff agreed. Defendant contacted her lawyer and told her to prepare a deed. The deed was prepared and both parties went to the lawyer's office and executed the deed marked D-1 in evidence.
After the deed was signed (within days), the reconciliation occurred. Defendant specifically waiting until after the deed was signed to resume cohabitation with Plaintiff and indicated that she probably would not have reconciled if he didn't deed the house to her as security in the event of a future separation.
No request was ever made by Plaintiff to put the house back in his name after the reconciliation. There is no reason why a valid reconciliation agreement should not be enforced.
Based upon the testimony and my assessment of the credibility of the witnesses, I have no doubt but that it was the Plaintiff's intent to divest himself of the property and give it to Defendant in furtherance of the reconciliation understanding between the parties.
The transfer took place in 1969. No demands were made to return the property to joint names after the reconciliation. Therefore, equitable estoppel opts to bar Plaintiff from now making a claim to the property....
*530 In some circumstances a reconciliation agreement will be enforced if it is fair and equitable. We remand for such further proceedings as may be needed for a determination of the factual issues raised by our identification of those circumstances.
Two years after the conveyance the Legislature authorized courts to equitably distribute between divorcing spouses the property that they acquired during the marriage. N.J.S.A. 2A:34-23. In Painter v. Painter, 65 N.J. 196, 217 (1974), the Supreme Court held "the Legislative intent to be that all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce." (Emphasis in original) In Rothman v. Rothman, 65 N.J. 219, 225-232 (1974), the Court held that the statute is constitutional even though it subjects to judicial distribution property that was acquired before its effective date. Plaintiff rests his argument on the fact that defendant acquired sole title to the marital home during the marriage thereby rendering it subject to equitable distribution under the statute.
Property acquired during a marriage may, however, be distributed by agreement. In a well-reasoned opinion, Judge Lesemann held that intended spouses may remove property from judicial distribution by a fair antenuptial agreement. Marschall v. Marschall, 195 N.J. Super. 16 (Ch.Div. 1984). A spouse's promise to marry may constitute the only consideration for the antenuptial promise being enforced. Spouses may also remove property from judicial distribution by entering into a fair separation agreement based upon mutual promises settling the distribution of their property and providing for support. See, e.g., Smith v. Smith, 72 N.J. 350, 359 (1977).
In the present case we have neither an antenuptial agreement made in contemplation of a marriage nor an interspousal agreement made in contemplation of a separation or divorce. The agreement alleged by defendant was made in contemplation of *531 a reconciliation. The question peculiar to such an alleged agreement is whether a spousal promise to resume cohabitation is adequate consideration to bind the other spouse to his or her reciprocal promise.
Although authority is sketchy, courts tend to favor reconciliation agreements as furthering the State's interest in preserving the marriage and will enforce them so long as they are fair and equitable. The matter is fully discussed in Barbour v. Barbour, 49 N.J. Eq. 429 (Ch. 1892), on facts similar to those presented here. The Court of Errors and Appeals reversed Vice-Chancellor Bird's decree enforcing the reconciliation agreement, but it did so solely upon the ground that the terms of the oral agreement had not been proved. Barbour v. Barbour, 51 N.J. Eq. 267 (E. & A. 1893). In Haines v. Roydhouse, 83 N.J. Eq. 675, 677 (E. & A. 1914), the high court indirectly approved Vice-Chancellor Bird's statement of the law in Barbour. The court expressed agreement with the determination of "the legal questions in the case" by the lower court which had in turn relied on Vice-Chancellor Bird's opinion. Id. at 676. We have held that while a divorce suit is pending, "forbearance to press for trial by plaintiff for a three-month period" is a valid consideration to support a promise to convey title to the marital home. Carlsen v. Carlsen, 49 N.J. Super. 130, 133 (App.Div. 1958).
We must proceed with care, however, where the consideration for a spousal promise is said to be the willingness of the other spouse to continue the marriage. That willingness must spring from more than the underlying marital commitment that keeps marriages going despite a spouse's faults. Courts will not enforce every spousal promise that was made to relieve a marital tension.
Where, however, the marital relationship has deteriorated at least to the brink of an indefinite separation or a suit for divorce, a spousal promise that induces a reconciliation will be enforced if it is fair and equitable. See generally Annotation, *532 "Resumption of marital relations as consideration," 149 A.L.R. 1012 (1944); Annotation, "Validity and enforceability of agreement designed to prevent divorce, or avoid or end separation," 11 A.L.R. 277 (1921).
Before a reconciliation agreement will be enforced, the court must determine that the promise to resume marital relations was made when the marital rift was substantial. If the agreement was oral and enforcement is sought of a promise to convey real estate, there must also be compliance with the statute of frauds. Carlsen, 49 N.J. Super. at 134-138. The court may have to resolve disputes over the terms of the agreement. Carlsen, 49 N.J. Super. at 138-139; Schichtel v. Schichtel, 3 Ark. App. 36, 621 S.W.2d 504, 507-508 (1981). The court must consider whether the circumstances under which the agreement was entered into were fair to the party charged. D'Arc v. D'Arc, 164 N.J. Super. 226, 238-239 (Ch.Div. 1978), rev'd in part, aff'd in part, 175 N.J. Super. 598 (App.Div. 1980), certif. den., 85 N.J. 487 (1981), cert. den., 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981). The terms of the agreement must have been conscionable when the agreement was made. See Wertlake v. Wertlake, 137 N.J. Super. 476, 482 (App.Div. 1975). The party seeking enforcement must have acted in good faith. See Marshall v. Marshall, 273 S.E.2d 360 (W. Va. Ct. App. 1981). Cf. Sullivan v. Sullivan, 79 Ill. App.2d 194, 223 N.E.2d 461 (1967) (court will not enforce conveyance made in exchange for wife's fraudulent promise to return home). Changed circumstances must not have rendered literal enforcement inequitable.
We must remand for further proceedings because the parties did not address these concerns at trial and the trial judge did not consider those that apply here. One fact, however, is clear. The parties' marriage had so deteriorated in 1969 that the rift between them could not be considered transitory. Defendant testified without contradiction that plaintiff "had had an affair" shortly before the one that preceded the agreement. When *533 confronted by defendant on that earlier occasion "he said [the affair] was over." Defendant, however, remained suspicious and later discovered that the illicit liaison was continuing. After the second confrontation plaintiff left the marital home to live for a short time in a rooming house. Defendant meanwhile sought the advice of an attorney "for getting a divorce or separation." Conduct that is a fault ground for a divorce corroborates the contention that the marriage had deteriorated to the point where the aggrieved spouse's condonation would constitute contractual consideration.
Defendant did not testify that without the conveyance she would have sued for divorce. Her testimony was that had plaintiff not given her the deed, "I don't think I would have taken him back at that time." The marriage need not be dead, however, for condonation to constitute contractual consideration. If a marriage is truly dead there cannot be a bona fide condonation. Plaintiff's continuous offensive conduct, the separation of the parties which followed and defendant's consultation with an attorney regarding an indefinite separation or divorce require a finding that the marital rift was substantial enough for defendant's subsequent condonation to qualify as contractual consideration.
The trial judge must determine the terms of the reconciliation agreement, and whether it is fair to enforce those terms. Plaintiff testified that he did not consult an attorney and believed that despite the deed he and defendant legally owned the property because of the marital relationship. He further testified that during the 12 years that followed the reconciliation he made extensive improvements to the property believing it to be his. The parties had acquired the lot as a wedding present from his parents.
Defendant acknowledged that her lawyer made all the arrangements and that the deed was signed in the lawyer's office. Her testimony respecting the agreement is as follows:

*534 I explained to him that he had done this to me twice and I was very upset. That if he would agree to it, and wanted to, you know, put the house in my name so that if he decided to take off again and just leave me that I would have some place to live with the children, and he agreed to it.
Defendant was then pregnant with the second of the three children of the marriage. She further explained her intent:
Q. Did you have an understanding as to what the effect of this deed for your security would be?
A. Yes. It meant that I had a place to live with my children that's mine. And, if he walked out on me in another month or in six months or a year, I had a place to live with the children and I had something.
On remand the trial judge must determine whether the agreement contemplated that the conveyance of the home would be absolute or limited to providing defendant security in the event that plaintiff should cast aside his marital obligations in the foreseeable future as he had in the recent past. The fact that plaintiff did not demand the return of his interest in the property does not necessarily prove that he knowingly conveyed the home to defendant unconditionally. It is understandable that he may have been loath to bring up the events of 1969 during the decade or more that the couple lived together thereafter in apparent harmony.
If the trial judge determines that the parties intended that defendant's sole ownership of the marital home would be unconditional, there remains the issue of whether the agreement was fair and equitable. We note that questions of fairness are raised by plaintiff's conveyance, under stressful circumstances, of practically all that he owned without benefit of the advice of counsel. In Barbour v. Barbour, 51 N.J. Eq. at 270-271, the Court of Errors and Appeals said that the husband's "extravagant protestations and promises" that "I will give you everything I have got" were "hysterical utterances" from which "[i]t would be dangerous to attempt to construct a legal contract."
Reversed and remanded for further proceedings, including a supplemental plenary hearing if necessary, consistent with this opinion. We do not retain jurisdiction.