861 A.2d 131 (2004)
373 N.J. Super. 198
Susan SAVAGE-KEOUGH, Plaintiff-Respondent,
v.
John KEOUGH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 2004.
Decided November 5, 2004.
*132 Randal W. Habeeb, Hackensack, argued the cause for appellant (Pless & Habeeb, attorneys; Randal W. Habeeb, on the brief).
*133 Deborah L. Ustas argued the cause for respondent (Weinberg & Ustas, attorneys; Deborah L. Ustas and Ashley Tate Cooper, on the brief).
Before Judges CONLEY, LISA and WINKELSTEIN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
The issue presented in this opinion is whether defendant husband waived his right to equitable distribution of plaintiff wife's ERISA-qualified stock option plan under the terms of the parties' antenuptial agreement. Defendant argues that ERISA's preemption and antialienation provisions preclude a pension plan participant from denying his or her spouse an interest in the plan, even if the spouse purported to waive that right in a premarital agreement. Plaintiff counters that it is only a participant's survivor benefits, not the pension benefits that constitute marital property for state law purposes, that ERISA prohibits a participant from alienating to the spouse's detriment. The Family Part judge agreed with plaintiff, and found that defendant's antenuptial agreement to waive his rights in plaintiff's pension plan was not precluded by ERISA. We agree and affirm.
These are the facts. On September 5, 1980, the day the parties were married, when plaintiff was thirty-two years old and defendant was fifty, they entered into an antenuptial, or premarital, agreement (the Agreement), in which each party waived his or her interest in certain assets of the other. Before signing the Agreement, each had it reviewed by his or her own attorney.
The parties' assets were listed in Schedule "A" to the Agreement. At the time of the marriage, defendant was the owner and operator of his own sales business while plaintiff was employed as a secretary at Bendix Corporation. Included on plaintiff's schedule were Bendix stocks, "presently owned and to be purchased in the future from payroll deductions." Plaintiff had enrolled in the Bendix Corporation's stock ownership plan on January 1, 1969, when she was twenty-one.
Plaintiff filed for divorce on March 21, 2002. During the twenty-two year marriage, plaintiff acquired significant interest in the plan, which, as a result of corporate mergers, came to be known as the Honeywell Savings & Stock Ownership Plan (the Plan).
Prior to the divorce trial, defendant moved in limine for an order that the Plan was eligible for equitable distribution. Defendant argued that federal law, specifically the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Retirement Equity Act of 1984(REA) (collectively referred to as ERISA, 29 U.S.C.A. §§ 1001 to -1461), precludes plaintiff from alienating her ERISA-qualified plan under the terms of the Agreement, thereby rendering it subject to equitable distribution.[1] Thus, he claimed his premarital waiver of his rights to plaintiff's Plan was unenforceable. The trial judge disagreed. He ruled that the Agreement was enforceable as to the Plan. As a consequence, he concluded that defendant waived his right to have that asset subject to equitable distribution.
The following day, the parties settled the remaining issues and the divorce was uncontested. An amended final judgment *134 of divorce was entered on May 23, 2003. The only issue on appeal is whether the Plan is subject to equitable distribution. In addressing this issue, we first review the law in New Jersey as it affects the equitable distribution of a divorcing party's pension.
The portion of a pension acquired during a marriage is typically an asset subject to equitable distribution. Kikkert v. Kikkert, 177 N.J.Super. 471, 475, 427 A.2d 76 (App.Div.), aff'd, 88 N.J. 4, 438 A.2d 317 (1981). Although New Jersey enacted the Uniform Premarital Agreement Act (the Uniform Act) in 1988, which governs the contents and enforcement of premarital agreements, see N.J.S.A. 37:2-31 to -41, the Agreement, having been executed in September 1980, is not subject to that act. See N.J.S.A. 37:2-41 (Uniform Act applicable only to premarital agreements executed on or after its effective date). Premarital agreements executed before the Uniform Act are, however, enforceable, so long as they satisfy certain conditions. See e.g., N.J.S.A. 37:2-4; D'Onofrio v. D'Onofrio, 200 N.J.Super. 361, 366, 491 A.2d 752 App.Div.1985); Nicholson v. Nicholson, 199 N.J.Super. 525, 530, 489 A.2d 1247 (App.Div.1985); DeLorean v. DeLorean, 211 N.J.Super. 432, 435, 511 A.2d 1257 (Ch.Div.1986).
To be enforceable, an antenuptial agreement signed prior to the passage of the Uniform Act must be voluntarily entered into, not unconscionable, and based on full financial disclosure. DeLorean, supra, 211 N.J.Super. at 436-38, 511 A.2d 1257. Here, these criteria were undisputedly met. Both parties fully disclosed their assets on the schedule attached to the Agreement, and no allegations of fraud, duress or unconscionability have been raised. In fact, defendant does not dispute that the Agreement was valid when executed. As such, in the absence of an ERISA prohibition, the Agreement is enforceable as written.[2] Because this is a purely legal issue, we address it de novo, as we are not bound by a trial court's construction of legal principles. Manalapan Realty, L.P. v. Township Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
"ERISA was enacted by Congress to protect the welfare of employees and their dependents who depend upon retirement plans." Hawxhurst v. Hawxhurst, 318 N.J.Super. 72, 82-83, 723 A.2d 58 (App.Div.1998). It is remedial legislation "to encourage the creation and growth of private pension[] plans while at the same time protecting the participants of those plans." Id. at 83, 723 A.2d 58.
ERISA includes a preemption clause, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C.A. § 1144(a). This preemption clause establishes the regulation of pension plans "as exclusively a federal concern." Hawxhurst, supra, 318 N.J.Super. at 83, 723 A.2d 58 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402, 416 (1981)). ERISA also contains a spendthrift clause, which prohibits participants in the plan from alienating their retirement benefits: "[e]ach pension plan shall provide that benefits provided under the *135 plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1).
It was this antialienation provision that drove Congress to pass REA in 1984. As enacted, ERISA often left women who had significantly contributed to the family's home and financial security unable to obtain any pension benefits upon divorce or the death of a husband. Ablamis v. Roper, 937 F.2d 1450, 1453 (9th Cir.1991). To remedy this inequity, Congress passed REA "in an effort primarily to safeguard the financial security of widows and divorcees." Ibid. REA required that "all qualified pension plans provide automatic benefits to surviving spouses in the form of a survivor's annuity (Pub.L. No. 98-397, 98 U.S. Stat. 1429 [1984])." Edmonds v. Edmonds, 184 Misc.2d 928, 710 N.Y.S.2d 765, 768 (Sup.Ct.2000)(citing 29 U.S.C.A. § 1055(a)(2)). ERISA was amended by REA "to ensure that a participant's spouse receives survivor benefits from a retirement plan even if the participant dies before reaching retirement age." Hurwitz v. Sher, 982 F.2d 778, 781 (2d Cir.1992), cert. denied, 508 U.S. 912, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993).
REA sets conditions on the waiver of survivor benefits. It must be in writing, signed by the participant and the participant spouse before either a notary or a plan representative, and a beneficiary designation may not be changed without the spouse's consent. Edmonds, supra, 710 N.Y.S.2d at 768 (citing 29 U.S.C.A. § 1055(c)(1), (2))[3].
Defendant's argument rests upon this waiver provision. He claims it is not just the waiver of the survivor benefit that requires strict compliance with this provision, but the waiver of all ERISA-qualified benefits. As such, because plaintiff concedes the Agreement does not so comply, defendant claims his execution of the Agreement was ineffective to waive his rights to plaintiff's Plan. Support exists for this position.
In broadly interpreting ERISA's preemption clause, the court in Richards v. Richards, 167 Misc.2d 392, 640 N.Y.S.2d 709 (Sup.Ct.1995), aff'd, 232 A.D.2d 303, 648 N.Y.S.2d 589 (1996), found that the plaintiff wife was not barred from equitable distribution of the defendant husband's ERISA-qualified pension plan, even though she waived her rights to that plan in a prenuptial agreement. Richards, like here, was not a survivor benefit case; the question was whether the wife was barred from equitable distribution of her husband's pension plan as a result of her execution of a premarital agreement. The court concluded that she could not waive her rights in her husband's plan, because the Congressional intent behind REA "was to insure that long-term homemakers' rights to their spouses' retirement benefits *136 were secured...." Id. at 710-11. To arrive at this conclusion, the court found that the statutory waiver requirements of REA applied to all interests one spouse had in the other's pension plan, not just the survivorship interest; and the waiver requirements were not met by the execution of the premarital agreement. For authority to support this proposition, the court substantially relied on Hurwitz, supra, 982 F.2d 778.
In Hurwitz, supra, the son of a deceased employee from a prior marriage brought an action against the employee's spouse, seeking an order that he was the beneficiary of his father's pension plan. 982 F.2d at 779. Before marrying the employee, the spouse had signed an agreement to forego "any rights to her future husband's property upon his death." Ibid. The court concluded that the premarital agreement by the employee's wife to waive her interest in her husband's pension did not constitute an effective waiver under ERISA. Id. at 781. At issue was not, however, the wife's interest in her husband's pension plan, but her interest in her husband's survivor benefits. It is therefore factually distinguishable from both Richards and the case here where survivor benefits were not in issue. In fact, in analyzing the language of ERISA, the Hurwitz court explicitly referenced that ERISA was amended by REA to ensure that the wife's survivor benefits were secure. Ibid.
An examination of the express language of the ERISA waiver provision leads to the same conclusion. The statute allows a participant to "elect ... to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both)...." 29 U.S.C.A. § 1055(c)(1)(A)(i)(emphasis added). A fair reading of this provision is that its application is restricted to a waiver of rights to ERISA survivor benefits, not to other pension benefits as asserted by defendant. This conclusion is also consistent with the reason ERISA was amended by REA  to make sure that if a plan participant died during the marriage, the surviving spouse would receive survivor benefits. See Hurwitz, supra, 982 F.2d at 781.
Both Richards and Hurwitz relied on Treasury regulations governing ERISA benefits. Richards, supra, 640 N.Y.S.2d at 711; Hurwitz, supra, 982 F.2d at 782. The regulations, written in question and answer format, read:
Q-28 Does consent contained in an antenuptial agreement ... entered into prior to marriage satisfy the consent requirements of section 401(a) 11 and 417 [of the Internal Revenue Code]?
A-28 No. An agreement entered into prior to marriage does not satisfy the applicable consent requirements...."
[Richards, supra, 640 N.Y.S.2d at 711; Hurwitz, supra, 982 F.2d at 782.]
The regulations are found under section 1.401(a)-20, "Requirements of qualified joint and survivor annuity and qualified preretirement survivor annuity." Treas. Reg. § 1.401(a)-20 (emphasis added). They relate to survivor benefits, which were not at issue in Richards. Though Richards was correct in its analysis as to ERISA survivor benefits, we disagree with its application of the ERISA waiver provision to the divorcing parties' interest in a spouse's pension plan as it constitutes marital property.
A more reasoned approach to the scope of ERISA's prohibition against alienation of benefits is found in Edmonds, supra, 710 N.Y.S.2d 765. There, like here, the parties signed a premarital agreement waiving their interests in each other's pension plan. Id. at 767. When they divorced, the husband contended that *137 ERISA preempted the state court from following the terms of the agreement and withholding the wife's pension from equitable distribution. Ibid. The court distinguished between the equitable distribution of a pension as marital property and the alienation of a spouse's survivorship rights. Id. at 769-70. The judge said:
[A]s in Hurwitz v. Sher, supra, the antenuptial agreement is not an effective waiver of survivor benefits mandated by ERISA because it does not contain a written election to waive such benefits, it does not designate a beneficiary which may not be changed without spousal consent, and it does not acknowledge the effect of the waiver (see 29 U.S.C.[A.] § 1055[c]). If plaintiff died during this marriage, the antenuptial agreement would not operate as a waiver of defendant's statutory survivorship benefits. However, unlike Hurwitz v. Sher, supra, this is not a death case in which the waiver at issue is one of survivorship benefits. The object of this action is a divorce, which, if granted, will dissolve the defendant's prospects of ever becoming the surviving spouse of the plaintiff. The spousal rights under ERISA do not survive a judgment of divorce, and once a divorce is granted, the survivorship benefits are moot. The issue here is defendant's entitlement under New York law to equitable distribution of plaintiff's pension as marital property, an entitlement which is not mandated by ERISA and the waiver of which is not restricted by ERISA.
[Id. at 769 (citations omitted).]
The Edmonds court distinguished Richards, noting that the court "failed to perceive that `spousal rights' under ERISA are limited to survivor benefits, and the statutory restrictions upon the waiver of such rights are likewise limited to survivor benefits." Id. at 770. Edmonds concluded that the "better view" was expressed in Moor-Jankowski v. Moor-Jankowski, 222 A.D.2d 422, 634 N.Y.S.2d 728 (1995), "that ERISA's restriction on the waiver of survivor benefits does not apply to the waiver of an interest in a spouse's pension...." Id. at 770. We agree with that reasoning, as have courts in other jurisdictions. See e.g., In re Rahn, 914 P.2d 463 (Colo.App.1996); Critchell v. Critchell, 746 A.2d 282 (D.C.2000); Stewart v. Stewart, 141 N.C.App. 236, 541 S.E.2d 209, 216 (2000); cf. Lefkowitz v. Arcadia Trading Co. Ltd. Ben. Pension Plan, 996 F.2d 600 (2d Cir.1993)(while divorce pending, husband died; absent effective waiver, surviving spouse automatically receives ERISA death benefits); Groh v. Groh, 288 N.J.Super. 321, 326-27, 672 A.2d 262 (Ch.Div.1995)(ERISA preempted state law concerning wife's interest in husband's pension death benefits).
As these cases demonstrate, it is the survivor benefit that is protected by ERISA, not a divorcing spouse's marital interest in a surviving spouse's pension plan. The plain language of 29 U.S.C.A. § 1055(c)(1)(A)(i) speaks in terms of survivor benefits, which, as we have emphasized, is consistent with the goal of the REA amendment to ERISA to protect a surviving spouse's right to benefits if the participant spouse dies during the marriage. See Hurwitz, supra, 982 F.2d at 781.
Here, if plaintiff died during the marriage, defendant would have been entitled to his statutory survivorship benefit. But, having survived the marriage, the final judgment of divorce dissolves any prospects defendant may have had of becoming plaintiff's surviving spouse. As the Rahn court said:
"[d]issolution of marriage proceedings, by definition, terminate the status of the spouse prior to the death of the participant, *138 thereby, also by definition, disqualifying that spouse from being, or ever becoming, a surviving spouse. We conclude that the restrictions of 29 U.S.C.[A.] § 1055(c)(2)(A) are designed to protect a surviving spouse, not a surviving former spouse." [In re Rahn, supra, 914 P.2d at 466-67].
The domestic relations of a husband and wife are governed by state, not federal, law. Boggs v. Boggs, 520 U.S. 833, 847-48, 117 S.Ct. 1754, 1763-64, 138 L.Ed.2d 45 (1997). ERISA does not create substantive rights for a divorcing party; rather, it "accommodates, by the provisions governing [Qualified Domestic Relations Orders (QDROs)], rights created by state matrimonial law." Edmonds, supra, 710 N.Y.S.2d at 768; Critchell, supra, 746 A.2d at 286.
New Jersey domestic relations law permits the enforcement of a premarital agreement in which a party waives his or her future rights to a spouse's pension plan. In our view, ERISA does not preclude such a waiver so long as the participant's survivor benefits are not at issue. Here, because plaintiff did not die during the marriage, the Agreement did not result in a loss to defendant of ERISA survivor benefits. Under these circumstances, the waiver by defendant of his rights to plaintiff's other pension benefits remains effective. In other words, ERISA does not negate defendant's waiver of his right to equitable distribution of plaintiff's Plan.
Defendant makes an alternate argument. He asserts that even if ERISA does not insulate plaintiff's ERISA-qualified plan from equitable distribution, he is entitled to a remand for an accounting of the pension, which was not undertaken by the trial judge. Defendant did not, however, raise that issue in the Chancery Division, and he is precluded from doing so here. Unless the question raised on appeal goes to trial court's jurisdiction or the matter is of great public interest, issues not raised before trial court are not considered on appeal. See Monek v. Borough of S. River, 354 N.J.Super. 442, 456, 808 A.2d 114 (App.Div.2002). The question of the accounting of the Plan meets neither of these criteria.
Affirmed.
NOTES
[1] In the trial court, defendant challenged two pension plans. It is only the Honeywell Plan, however, that is subject to this appeal.
[2] Although on appeal defendant claims the Agreement was orally modified by the parties, aside from his unsupported certification, he has submitted no evidence to maintain that claim. We find defendant's arguments on this issue to be sufficiently without merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).
[3] The statute reads, in part,

(c) Plans meeting requirements of section
(1) A plan meets the requirements of this section only if 
(A) under the plan, each participant 
(i) may elect ... to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both), and....
* * *
(2) Each plan shall provide that an election under paragraph (1)(A)(i) shall not take effect unless 
(A) (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary ... which may not be changed without spousal consent ... and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public....
[29 U.S.C.A. § 1055(c)(1),(2)]