**In re the MARRIAGE OF Marilyn
L. RAHN, Appellant,**

and

**Charles E. Rahn, Appellee.**

**No. 94CA0106.**

Colorado Court of Appeals,
Div. V.

Aug. 10, 1995.

Rehearing Denied Oct. 5, 1995.

Certiorari Denied March 18, 1996.

Cox, Mustain–Wood, Walker & Schumacher, Timothy B. Walker, Littleton, for appellant.

Cross, Gaddis, Kin, Herd & Kelly, P.C., Debra L. Kelly, Colorado Springs, for appellee.

Opinion by Judge ROY.

In this dissolution of marriage proceeding, Marilyn L. Rahn (wife) appeals the judgment declaring that her prenuptial agreement was valid based on adequate disclosure and that it was effective as a waiver of her interest in a pension plan qualified under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. (1988) (ERISA) provided by the employer of Charles E. Rahn (husband). We affirm.

One week before their marriage in 1983, the parties, without the assistance of counsel, prepared and executed a prenuptial agreement. That agreement generally provided that each party waived any claim to the property of the other. Thus, as to wife's claims against husband's property, the agreement stated:

> All of the property now owned or hereafter acquired by [husband] will remain his sole and separate property throughout the marriage. [Wife] shall not claim or acquire any interest in any of his property if it increases in value during the marriage, jointly held property being excepted.

In 1983, husband had a vested interest in an ERISA-qualified pension plan provided by his employer, an interstate airline. During the marriage he continued his employment with that employer, and his pension benefit increased in value.

In 1993, the parties filed a co-petition to dissolve their marriage. On husband's motion and after an evidentiary hearing, the trial court determined that the prenuptial agreement was valid and that wife thereby had waived any interest in husband's pension plan.

## I.

■ In this appeal, wife first contends that the trial court erred in finding that the prenuptial agreement was valid. She argues that it was not based on fair disclosure. We disagree.

■ The prenuptial agreement was executed in another state and prior to the effective date of the Colorado Marital Agreement Act, § 14–2–301, et seq., C.R.S. (1987 Repl. Vol. 6B). Therefore, that act has no application here. Hence, we must look to and apply the case law existing prior to that act to determine the validity of the prenuptial agreement under Colorado law. *See* § 14–2–310, C.R.S. (1987 Repl.Vol. 6B).

■ Under that prior case law, if a prenuptial agreement was entered into in good faith, with full and fair disclosure, and without fraud or overreaching, the agreement was held to be valid and enforceable. *In re Marriage of Newman*, 653 P.2d 728 (Colo. 1982). To achieve such a "full and fair disclosure," the parties must disclose the general and approximate value of their assets and debts, but they are not required to produce detailed, written financial statements. *In re Estate of Lopata*, 641 P.2d 952 (Colo.1982); *In re Marriage of Ross*, 670 P.2d 26 (Colo. App.1983).

Here, wife testified that husband had not disclosed to her the existence or value of his pension plan. However, husband testified to the contrary and stated that he had disclosed his assets, although not in writing, and that wife had a general knowledge of them. He also testified that he had specifically described the pension plan to wife, including the method for calculating the benefit, and he had given her an estimate of its 1983 value of about $4500 per month.

■ The trial court resolved that conflicting testimony in husband's favor, and we may not reweigh that evidence or substitute our judgment for that of the trial court. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Contrary to wife's contention, a written disclosure was not, and is not, required. Even though the prenuptial agreement contemplated that the parties would attach lists of their assets, neither party complied, and the agreement is not rendered invalid by that lack of compliance.

## II.

■ Wife also contends that the trial court erred in determining that, by way of the prenuptial agreement, she waived her spousal rights to husband's ERISA-qualified pension plan. She argues that the prenuptial agreement did not satisfy the requirements of the federal statutes and regulations regarding waivers of ERISA benefits. In contrast, husband argues that the federal statutes and regulations address the waiver of *survivor benefits* only, which type of benefits are not at issue here, and are silent as to the waiver of other types of pension benefits. Thus, he concludes that the prenuptial agreement is a valid waiver of all wife's rights in the pension plan as relevant to this dissolution proceeding. We agree with husband.

ERISA provides explicit requirements for a spouse's waiver of rights to the "qualified joint and survivor annuity" and the "qualified preretirement survivor annuity" in a qualified plan. The terms "qualified joint and survivor annuity" and the "qualified preretirement survivor annuity" are terms defined by the statute which, without setting forth the definitions, refer to a person who was the spouse of the participant at the time of the participant's death. 29 U.S.C. §§ 1055(d) & (e) (1988).

Specifically, the waiver of a surviving spouse's rights to benefits is not valid unless: 1) it is in writing; 2) it either recites the alternative beneficiary or expressly permits the employee to designate an alternate without further consent of the spouse; and 3) it "acknowledges the effect" of the waiver and is notarized or witnessed by a plan representative. 29 U.S.C. § 1055(c)(2)(A) (1988). In addition, the waiver must be made within the "applicable election period." 29 U.S.C. § 1055(c)(1)(A) (1988); *see also* 26 U.S.C. § 417(a)(2) (1988) (similar IRS requirements).

Regulations interpreting those statutory requirements provide that a spouse's waiver

of a survivor benefit is not valid if made before August 23, 1984. Treas.Reg. § 1.401(a)–20 Q & A 43 (1988). The regulations also state:

> *An agreement entered into prior to marriage does not satisfy the applicable consent requirements,* even if the agreement is executed within the applicable election period.

Treas.Reg. § 1.401(a)–20 Q & A 28 (1988) (emphasis added).

ERISA also requires that a spouse must consent to the withdrawal of the present value of a "qualified joint and survivor annuity" or a "qualified preretirement survivor annuity." 29 U.S.C. § 1055(g) (1988). The Internal Revenue Code has similar requirements for granting a security interest in a retirement plan. 26 U.S.C. § 417(f) (1988).

It has, therefore, been held that a waiver of a right to survivor benefits in an ERISA-qualified plan in a prenuptial agreement is ineffective and the surviving spouse is entitled to the survivor benefits even though others are named as survivor beneficiaries with the plan administrator. For example, in *Callahan v. Hutsell, Callahan & Buchino, P.S.C.,* 813 F.Supp. 541 (W.D.Ky.1992), *vacated on other grounds,* 14 F.3d 600, 1993 WL 533557 (6th Cir.1993), the parties executed a prenuptial agreement in which the surviving spouse specifically waived any right to a survivor benefit in a described ERISA-qualified retirement plan and agreed to execute future documents including those attached to the prenuptial agreement after the marriage. No further documents were presented to the surviving spouse and the plan participant died two months after the marriage. A trust was the designated beneficiary of the retirement plan upon the death of the participant. The court held that the prenuptial agreement did not constitute a valid waiver under 29 U.S.C. § 1055(c)(2)(A) and, therefore, the surviving spouse was the beneficiary. *See also Hurwitz v. Sher,* 789 F.Supp. 134 (S.D.N.Y.1992), *aff'd,* 982 F.2d 778 (2d Cir.1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993); *Zinn v. Donaldson Co.,* 799 F.Supp. 69 (D.Minn. 1992); *contra In re Estate of Hopkins,* 214 Ill.App.3d 427, 158 Ill.Dec. 436, 574 N.E.2d 230 (1991), *appeal denied,* 141 Ill.2d 542, 162 Ill.Dec. 489, 580 N.E.2d 115 (1991).

■ Domestic relations are preeminently matters of state law, and therefore, Congress, when it passes general legislation, rarely intends to displace state authority in this area. *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). On the rare occasion when state family law has come into conflict with a federal statute, the United States Supreme Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be preempted. *Rose v. Rose,* 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599, 607 (1987). Before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1, 11 (1979).

■ The federal ERISA statute expressly provides that it supersedes state laws *regulating* qualified employee benefit plans. 29 U.S.C. § 1144(a) (1988). Hence, state law is preempted generally in that area of regulation. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

ERISA requires that benefits under an ERISA-qualified plan may not be assigned or alienated subject to certain narrow exceptions. 29 U.S.C. § 1056(d)(1) (1988). One of the narrow exceptions is that benefits, including survivor benefits, may be divided in a dissolution of marriage proceeding in state court through the use of a "Qualified Domestic Relations Order" (QDRO) and requires the qualified plan to pay in accordance with the order. 29 U.S.C. § 1056(d)(3)(B) (1988). While ERISA is quite detailed as to the form and contents of a valid QDRO, it does not contain or incorporate the requirements of 29 U.S.C. § 1055(c)(2)(A) with respect to such orders. ERISA also places no similar requirements on a settlement agreement which, upon approval by the state court, forms the basis for the QDRO.

Dissolution of marriage proceedings, by definition, terminate the status of the spouse

prior to the death of the participant, thereby, also by definition, disqualifying that spouse from being, or ever becoming, a surviving spouse. We conclude that the restrictions of 29 U.S.C. § 1055(c)(2)(A) are designed to protect a surviving spouse, not a surviving former spouse.

A different, but related, issue was addressed in *Fox Valley & Vicinity Construction Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.1990), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). In *Fox Valley,* the husband was covered by a qualified retirement plan payable to wife as the designated beneficiary. Husband and wife were divorced after entering into a court approved separation agreement in which wife waived any interest in the plan and which waiver did not meet any of the requirements of 29 U.S.C. § 1055(c)(2)(A). The court's order dissolving the marriage was not, and did not contemplate, a QDRO. The parties continued to live together following the divorce; former husband did not change the beneficiary with respect to his retirement plan; former husband passed away; and former wife applied for the payment of the lump sum death benefit. The retirement plan interpleaded the proceeds naming the former wife and husband's surviving mother as defendants.

From an adverse summary judgment in favor of the husband's mother, former wife appealed. The Seventh Circuit Court of Appeals affirmed, stating in pertinent part:

> In arguing that her waiver is preempted by ERISA, [wife] misinterprets the purpose behind the spendthrift provisions and the intended effect of a QDRO. The spendthrift provisions of ERISA are designed to 'ensure that the employee's accrued benefits are actually available for retirement purposes,' by preventing unwise assignment or alienation.... These provisions focus on the assignment or alienation of benefits by a participant, not the waiver of a right to payment of benefits made by a designated beneficiary. The QDRO exception is also centered on the alienation or assignment of benefits.... A QDRO creates a right to payment of benefits. The marital property settlement at issue in this case waives any right to those benefits.
>
> The QDRO requirements specify the procedures necessary to assign benefits, but those procedures need not be followed when a nonparticipant is waiving an interest in pension benefits.... We hold that a proper waiver of interest by a nonparticipant in a plan is not preempted by ERISA's anti-alienation provisions, which in this case was incorporated by a state court into a judgment....
>
> ....
>
> Having established that it is possible for a nonparticipant to waive an interest in pension benefits without using a QDRO, we must now determine whether there was an effective waiver of interest in this case. ERISA is silent on the issue of what constitutes a proper waiver in this situation, and the existing body of federal common law interpreting ERISA gives little guidance on this point....
>
> ....
>
> The ability of a spouse to waive rights to a benefit through a specific waiver in a divorce settlement has been recognized by many courts and we adopt that rule for purposes of ERISA.

*Fox Valley & Vicinity Construction Workers Pension Fund v. Brown, supra,* at 279–81.

Our holding is consistent with *Houdek v. Mobil Oil Corp.,* 879 P.2d 417 (Colo.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1068 (1995). In *Houdek,* plaintiffs brought state law claims against their former employer alleging that the former employer had misrepresented early retirement benefits under an ERISA-qualified retirement plan. A federal court had already ruled that plaintiffs had no ERISA claims with respect to the retirement plan because they were no longer participants.

Plaintiffs took the position that the absence of a viable ERISA claim meant that the state law claims were not preempted, and that their state law claims did not relate to an ERISA plan. A division of this court held to the contrary on the basis that resolution of plaintiffs' state law claims would require examining the operation and funding of the

retirement plan and would impact disclosure requirements. The court's discussion emphasized the breadth of the ERISA preemption but recognized that state action having only incidental effect was not preempted.

Here, in our view, the impact, if any, on the operation, administration, or regulation of the plan is, at most, incidental and neither addresses an employee's eligibility for a benefit or the amount of that benefit. *See Barrett v. Hay*, 893 P.2d 1372 (Colo.App.1995) (malpractice action against accountants and others with respect to incorrect advice as to tax implications of the use of death proceeds received from an ERISA-qualified plan not preempted because of lack of a fiduciary relationship between the defendants and the plan); *Celebrity Custom Builders v. Industrial Claim Appeals Office*, — P.2d — (Colo.App. No. 94CA1937, June 15, 1995) (inclusion or exclusion of the cost of maintaining an ERISA plan from wages for the purpose of computing workers' compensation benefits not a violation of federal preemption).

Some commentators have suggested that it may be impossible to effect a valid waiver of any ERISA-qualified pension benefits by means of a prenuptial agreement. *See* D. Mills, *Beware of the Trap—Marital Agreements and ERISA Benefits*, 23 Colo.Law. 577 (March 1994); K. Vetrano, *Spousal Waiver of Pension Premaritally and Upon Divorce*, 13 Fair$hare No. 9, 10 (September 1993); J. Dam, *Most Prenuptial Agreements Invalid under Federal Law*, Lawyers Weekly USA 1 (August 16, 1993). We do not read the specific survivor-benefit-waiver requirements of the ERISA statute so broadly.

 We hold that ERISA does not preempt state dissolution of marriage law with respect to the waiver of all interests in a ERISA-qualified retirement plan in a dissolution of marriage proceeding. While we recognize that a waiver of spousal death benefits in a prenuptial agreement is not effective when the spouse later dies while the parties are still married, ERISA does not, in our view, preempt or preclude the recognition, implementation, or enforcement of an otherwise valid prenuptial agreement with regard to, as here, a dissolution of marriage proceeding.

Therefore, wife's waiver of any interest in husband's ERISA-qualified retirement plan in the valid prenuptial agreement is enforceable in this dissolution of marriage proceeding.

The judgment is affirmed.

RULAND and ROTHENBERG, JJ., concur.