Douglas A. CRITCHELL, Appellant,

v.

Penelope B. CRITCHELL, Appellee.

No. 98–FM–1304.

District of Columbia Court of Appeals.

Argued Dec. 2, 1999.

Decided Feb. 10, 2000.

Linda J. Ravdin, Washington, DC, for appellant.

Peter R. Sherman, with whom Claudia A. Pott, Washington, DC, was on the brief, for appellee.

Before and TERRY, FARRELL and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

The issue on appeal is whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended by the Retirement Equity Act of 1984 (REA),

29 U.S.C. § 1001 *et seq.*, pre-empts state marital property law and proscribes a non-participating spouse's waiver of a property interest in her husband's pension at divorce by a validly executed prenuptial agreement. The trial judge ruled that ERISA pre-empted the District of Columbia's marital property law and ordered an equal distribution of the husband's pension fund. For the following reasons, we reverse.

## I. FACTUAL SUMMARY

Douglas Critchell was employed by the American Funds Group and at the time of divorce participated in two qualified retirement plans, the Master Retirement Plan and the 401(k) Tax Advantage Plan. Douglas Critchell and Penelope Critchell entered into a prenuptial agreement on August 8, 1986, in anticipation of marriage. The prenuptial agreement provided in pertinent part:

> 12. Each party shall, during his or her lifetime, keep and retain sole ownership, control and enjoyment of all property, real, personal or mixed, now owned or hereafter solely acquired by him or her, free and clear of any claim by the other, other than as provided herein. No property titled to either party separately shall be considered marital property.

The couple married on August 10, 1986, and separated in December 1995. Penelope Critchell filed a complaint for divorce, alimony, equitable distribution of marital property and other relief. On January 30, 1998, the trial court held that the prenuptial agreement was valid and proceeded to determine the parties' rights and obligations with respect to spousal support and the division of marital property pursuant to the law of the District of Columbia.

Douglas Critchell filed a motion for partial summary judgment arguing that his wife had waived any interest in his separate property, including his qualified retirement plans, because both plans were titled in his name alone. Penelope Critc-

hell responded to the motion for summary judgment by asserting that any waiver of her interest, by the prenuptial agreement, was invalid under ERISA. The trial judge granted summary judgment in favor of Penelope Critchell and ruled that ERISA pre-empted the District of Columbia marital property law permitting the premarital waiver of a former spouse's interest in the participant's pension at the time of divorce.

## II. STANDARD OF REVIEW

■■■ We review the grant of a motion for summary judgment *de novo*. *Kendrick v. Fox Television*, 659 A.2d 814, 818–19 (D.C.1995). In reviewing a trial court order granting a summary judgment motion, we conduct an independent review of the record, and our standard of review is the same as the trial court's standard in considering the motion for summary judgment. *Sherman v. District of Columbia*, 653 A.2d 866, 869 (D.C.1995).

## III. ANALYSIS

The central question in regard to federal pre-emption is whether "state law conflicts with the provisions of ERISA or operates to frustrate its objects." *Boggs v. Boggs*, 520 U.S. 833, 841, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).[1] ERISA's general pre-emption clause, 29 U.S.C. § 1144(a), provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." "Initially, the Supreme Court interpreted ERISA's pre-emption statute as creating a 'deliberately expansive' pre-emption of state law." *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 953 (9th Cir. 1998) (citation omitted). "Recently, 'the Court has come to recognize that ERISA pre-emption must have limits when it enters areas traditionally left to state regula-

tion.'" *Id.* (citations omitted). Domestic relations is an area of law usually governed by state law, and general legislation enacted by Congress rarely attempts to displace the authority of the state in this area. *Mansell v. Mansell*, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). "On the rare occasion when state family law has come into conflict with a federal statute, the United States Supreme Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre[-]empted." *Rahn v. Rahn*, 914 P.2d 463, 465 (Colo.Ct.App.1995) (citing *Rose v. Rose*, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987)). Moreover, 29 U.S.C. § 1056(d)(3)(B)(i)(1) of ERISA expressly defers to state domestic relations law to define a spouse's property rights in the event of divorce. Because we conclude that the District of Columbia's marital property law, that recognizes the waiver of a spouse's potential property interest upon divorce pursuant to a valid prenuptial agreement is consistent with ERISA, we need not engage in a traditional pre-emption analysis.

■■■ ERISA was passed by Congress as a federal regulatory scheme to govern employee benefit plans by providing standards for the establishment, operation and administration of these plans so as to ensure their financial soundness for employees. 29 U.S.C. § 1001(a). ERISA prohibits the alienation or assignment of benefits because the statute was designed with the main purpose of protecting the interests of plan participants and their beneficiaries by minimizing the dissipation of pension funds. 29 U.S.C. § 1001(b); *see also Boggs*, 520 U.S. at 845, 117 S.Ct. 1754. We are informed by the United States Supreme Court that "ERISA does not con-

1. The *Boggs* case represents the United States Supreme Court's most recent analysis of ERISA pre-emption of state domestic law. The *Boggs* case is instructive and helpful although the issue—whether a nonparticipating predeceased spouse may transfer by testa-

mentary instrument an interest in the participant's undistributed pension plan benefits—is different. The Court in *Boggs* held that a nonparticipating spouse may not make a testamentary assignment of funds to a third party nonbeneficiary.

fer beneficiary status on ... [former spouses] by reason of their marital ... status." *Boggs*, 520 U.S. at 847, 117 S.Ct. 1754. Instead, "ERISA confers beneficiary status on a nonparticipant spouse ... in only narrow circumstances delineated by its provisions." *Id.* at 846, 117 S.Ct. 1754. The protections afforded to spouses of plan participants are found in two ERISA provisions: 1) the qualified joint and qualified pre-retirement survivor annuity (survivor annuity); and 2) the qualified domestic relations order (QDRO) proviso, which is exempt from ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(3)(A), and general pre-emption clause, 29 U.S.C. § 1144(b)(7). *Boggs*, 520 U.S. at 846, 117 S.Ct. 1754. "The QDRO and the surviving spouse annuity provisions define the scope of a nonparticipant spouse's community property interest in pension plans consistent with ERISA." *Id.* at 850, 117 S.Ct. 1754. In this case, Penelope Critchell is a former wife; therefore, the ERISA surviving spouse annuity and related protections are inapplicable to her.[2] *See id.* at 843, 117 S.Ct. 1754 (commenting that "the statutory object of the qualified joint and survivor annuity provisions, along with the rest of [29 U.S.C.] § 1055, is to ensure a stream of income to *surviving* spouses") (emphasis added).

The plain language of the statute creates a dichotomy between current spouses who are potentially surviving spouses and former spouses. ERISA provides only one mechanism to vindicate the rights of a former spouse at the time of divorce, the QDRO procedure set forth in 29 U.S.C. § 1056(d)(3). Although ERISA is silent on the issue of the validity of a former spouse's waiver of a property interest in a participant's pension benefits by a prenuptial agreement, the statute clearly expresses that the division of marital property upon divorce is subject to state law by the court's entry of a QDRO:

> (B)For purposes of this paragraph—
>
> (i) the term "qualified domestic relations order" means a domestic relations order—
>
> (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, ...
>
> (ii) the term "domestic relations order" means any judgment, decree, or order (including the approval of a property settlement agreement) which—
>
> (I) relates to the provision ... [of] marital property rights to a spouse [or] former spouse ... and
>
> (II) is made pursuant to a State domestic relations law (including community property law).

29 U.S.C. § 1056(d)(3)(B)(i), (ii). In *Boggs*, the Court expressed that "the QDRO provisions address the rights of divorced and separated spouses, ... which are the traditional concern of domestic relations law." 520 U.S. at 849, 117 S.Ct. 1754. Here, Congress sought to protect

---

**2.** "The terms 'qualified joint and survivor annuity' and the 'qualified preretirement survivor annuity' are terms defined by the statute which, without setting forth definitions, refer to a person who was the spouse of the participant at the time of the participant's death." *Rahn*, 914 P.2d at 465; 29 U.S.C. § 1055(d), (e). "ERISA provides explicit requirements for a spouse's waiver of rights to the 'qualified joint and survivor annuity' and the 'qualified preretirement survivor annuity' in a qualified plan." *Rahn*, 914 P.2d at 465. The surviving spouse annuity cannot be waived unless certain requirements are met: 1) that the spouse consents in writing; 2) that a beneficiary (or form of benefits) is designated which cannot be changed without spousal consent (unless the spouse expressly consents to permit future designations by the participant); and 3) the spouse's consent is witnessed by a plan representative or notary public, 29 U.S.C. § 1055(c)(2)(A)(1). "ERISA also requires the consent of a current spouse for the withdrawal of the present value of a 'qualified joint and survivor annuity' or a 'qualified preretirement survivor annuity.'" *Rahn*, 914 P.2d at 466; 29 U.S.C. § 1055(g). However, contrary to appellee's suggestion, these mandatory consent requirements for the waiver of pension benefits do not apply to divorced spouses.

divorcing wives by allowing, but not requiring, state law to circumvent ERISA's anti-alienation election by designating the former spouse as an alternate payee and providing her with an interest in the participant's pension benefits. *See Boggs,* 520 U.S. at 839, 117 S.Ct. 1754. ERISA does not insist that a state court recognize a former wife as an alternate payee to an interest in her spouse's pension, but only yields to the prerogative of state law to do so. Penelope Critchell conflates the status distinctions between surviving or current spouses and former spouses, arguing for example, that the Treas.Regs. § 1.401(a)–20, A–28 (1991), which provide that "[a]n agreement entered into prior to marriage does not satisfy the applicable consent requirements" apply to a spouse at the time of divorce. The treasury regulations proffered by Penelope Critchell specifically reference the consent requirements designated for the waiver of a surviving spouse annuity by a current souse, not the situation presented in this case.

Indeed, case law has articulated that "[a] divorced spouse, unlike a current spouse, is not protected by the explicit terms of the statute," and a divorced spouse may waive benefits without following the explicit requirements of the statute. *Hurwitz v. Sher,* 982 F.2d 778, 783 (2d Cir.1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993); *see also, e.g., Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.), *cert. denied,* 498 U.S. 820,

111 S.Ct. 67, 112 L.Ed.2d 41 (1990). The instant case is one of first impression in the District of Columbia, and the issue presented here has not been squarely addressed by any other court, except the Colorado Court of Appeals in *Rahn.* In *Rahn,* the court concluded that ERISA's consent requirements relate to the waiver of survivor benefits only, and the statute is "silent as to the waiver of other types of pension benefits." 914 P.2d at 465. In reaching its decision, the Colorado Court of Appeals reasoned that the "[d]issolution of marriage proceedings, by definition, terminate the statute of the spouse prior to the death of the participant, thereby, also by definition, disqualifying that spouse from being, or ever becoming, a surviving spouse[;]" and "the [consent] restrictions of 29 U.S.C. § 1055(c)(2)(A) are designed to protect a surviving spouse, not a . . . former spouse." *Id.* at 466–68.

Nothing in the plain language of ERISA, nor case law, suggests that a former spouse is unable to waive her property interest in her husband's pension at the time of divorce.[3] To the contrary, ERISA only details that a survivor's annuity may not be waived,[4] but the statute is purposefully silent and does not demand the same safeguards for former spouses. Importantly, ERISA does not create or afford a former spouse any substantive rights, and a divorcing spouse's right to a property interest in pension benefits arises only by

---

**3.** Appellee does proffer a New York Supreme Court case, *Richards v. Richards,* 167 Misc.2d 392, 640 N.Y.S.2d 709, 711 (1995), in which the court held that a prenuptial agreement did not fulfill the consent requirements necessary to waive ERISA benefits. The *Richards* case involved an attempted premarital waiver of the survivor annuity, as well as any future interest in the participant's pension. The New York Supreme Court relied on *Hurwitz,* a case which spoke to the inability to waive a survivor annuity, to stand for proposition that only a spouse, not a fiancée, can waive any interest in ERISA benefits. *Richards,* 640 N.Y.S.2d at 710–11. However, the court in *Richards* treated the wife's waiver of ERISA benefits as one bundle of rights; and failed to

distinguish between the waiver of survivor benefits, which automatically vest and require specific spousal consent, and the waiver of an undetermined future interest at the time of divorce. It is also significant, as aforementioned in this opinion, that the Second Circuit in *Hurwitz,* the case upon which the court in *Richards* relies, expressed that "[a] divorced spouse, unlike a current spouse, is not protected by the explicit terms of the statute." *Hurwitz,* 982 F.2d at 783.

**4.** "Even a plan participant cannot defeat a nonparticipant surviving spouse's statutory entitlement to an annuity." *See Boggs,* 520 U.S. at 843, 117 S.Ct. 1754.

operation of state marital property law. It is because of D.C.Code § 16–910, part of the District of Columbia Marriage and Divorce Act of 1977, that a former spouse may gain an interest in a participant's pension benefits. The marital property law in the District of Columbia provides:

> Upon the entry of a final decree of annulment or divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (b)distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable .... The court shall also consider ... each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

If the parties in this case were not domiciled in the District of Columbia (or a community property state or another common law property state that has a statute either providing for the distribution of separate property or characterizing pensions as marital property), then neither party would have a right to the other's separate pension upon divorce and ERISA would not bestow such a right on the nonparticipating spouse.[5] It would indeed be an anomaly in the law to suggest that a federal statute pre-empts a state domestic law to mandate the recognition of a right (a former spouse's interest in a participant's pension) that the statute itself does not create or afford.

 The District of Columbia's marital property law recognizes and effectuates the terms of a prenuptial agreement that the court has found to have been validly executed, as in this case. *See generally Burtoff v. Burtoff,* 418 A.2d 1085 (D.C. 1980). In the District of Columbia, prenuptial agreements are not necessarily void as against public policy, but courts are charged with scrutinizing such an agreement more carefully than other contracts to determine its fairness, whether it was entered voluntarily, and whether it was entered after full disclosure of financial assets by both parties. *Id.* at 1089. Because ERISA expressly defers to state law to determine if a former spouse has an interest in her spouse's pension, and the District of Columbia recognizes prenuptial agreements found to be valid in a court of law, appellee has waived any claim to a property interest in the participant's pension. *See* 29 U.S.C. § 1056(d)(3)(B)(ii)(2).[6]

To decide otherwise, we would have to accept the proposition that Congress, in enacting the REA, intended to make ERISA subject to state domestic relations law only to the extent that a nonparticipating spouse earns a property interest in her spouse's pension benefits, but not to the extent that state law allows the waiver of a right to a potential property interest upon divorce via a prenuptial agreement. This is essentially appellee's argument. Penelope Critchell suggests that a former spouse's waiver of property interest is in-

---

**5.** Interestingly enough, a trial judge is not required to divide a divorce couple's marital property equally. *See generally Barbour v. Barbour,* 464 A.2d 915 (D.C.1983). In the present case, the spouse's interest in the participant's pension arises because of the District of Columbia's marital property law, but it is within the discretion of the trial judge to afford a former spouse an interest in the participant's benefits.

**6.** It is important to note in this case that Penelope Critchell is not challenging the trial judge's ruling that the prenuptial agreement was valid. In this regard, we are dealing with a voluntary and fair contract that was entered with the aid of counsel for each party. We accept the trial judge's ruling and refuse to proceed in a paternalistic fashion by presuming that the wife did not desire to enter the contract or benefit fully from the agreement.

valid under ERISA because the statute was amended "to better protect women who had contributed to their marriages' financial security through their work in the home, anticipated sharing in the pension income received upon their husbands' retirement, but were left inescapably dependent on their husbands' earnings, at the mercy of death or divorce," *Kahn v. Kahn,* 801 F.Supp. 1237, 1244 (S.D.N.Y.1992), and that "the QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income." *Boggs,* 520 U.S. at 853, 117 S.Ct. 1754. However, we are not convinced that in drafting the exhaustive and meticulous procedures set forth in ERISA, Congress detailed requirements for an effective waiver of a survivor annuity, but mistakenly omitted its intent to demand the same consent requirements for the waiver of pension benefits by a former spouse. Therefore, we are cautious and refrain from reading into the text of the statute heightened consent requirements that are not expressed in the statute itself.[7]

The broad generalization that the REA was enacted to protect wives, who had traditionally been precluded from reaching pension funds, cannot withstand the clear language of the statute and the intent of Congress to treat surviving spouses differently from former spouses. The reasoning and fairness of such a distinction is a decision for the legislature to address and not this court.[8] Therefore, we hold that ERISA does not pre-empt the District of Columbia's marital property law with respect to a divorced wife's ability to waive her potential property interest in her husband's pension by a validly executed prenuptial agreement.[9] Accordingly, the decision of the trial judge is reversed, and this case is remanded to the trial court with instructions to distribute the participant's accrued pension benefits in accordance with the law of the District of Columbia.

*So ordered.*

7. To the contrary, the congressional hearings considering the enactment of the REA clearly speak to the Congress' intent to provide certain protections for widows and spouses of retired participants, and to allow accrued pension benefits to be subjects to property settlement laws in the case of divorce. *See generally* H.R. 1641 REP. No. 98–655, pt. 1 (1984). It is helpful to note that when considering the REA, Congress heard testimony from a widow and women's organizations advocating specifically for the rights of widowed or retired women. *Legislative Hearing on Pension Issues,* 1982: *Hearing on 1641 Before the Subcomm, on Labor–Management Relations,* 97th Cong., 2d Sess. (1982).

8. We recognize that the absence of rigorous consent requirements for the waiver of a former spouse's interest in the participant's pension may well perpetuate the very situation that Congress expressed a desire to address, with respect to a divorcing spouse whose survivor annuity or preretirement benefits have not vested. However, it is clear from the text of the statute that Congress consciously decid-

ed that the division of accrued pension benefits in the event of divorce would be determined by state law and did not require waiver by the consent requirement applicable to the survivor annuity.

9. Appellee also argues that trial judge's entry of a QDRO equally distributing the husband's pension benefits moots this appeal. However, the decision of the trial judge to enter a QDRO was based on a faulty premise. The judge's decision to assign the wife an interest in the husband's pension was premised on the mistaken belief that ERISA pre-empted state law and rendered a former spouse's waiver of her interest in the participant's pension benefits at divorce invalid.

Additionally, appellee contends that this court lacks jurisdiction because appellant's appeal was not timely filed. However, appellee filed a motion to dismiss this appeal on the basis of lack of jurisdiction, which was denied by this court on February 12, 1999. We see no need to reconsider that decision here.