25CA1669 Parental Resp Conc EAR-L 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1669
Adams County District Court No. 24DR30365
Honorable Teri L. Vasquez, Judge

---

In re the Parental Responsibilities Concerning E.A.R-L., a Child,

and Concerning Carmen Lydia Rosado,

Appellant,

and

John Michael Larkins,

Appellee.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Brown Carrington, PLLC, Dorothy Walsh Ripka, Denver, Colorado, for Appellant

No Appearance for Appellee

¶ 1     Carmen Lydia Rosado (mother) appeals the district court's judgment allocating decision-making responsibilities and parenting time. We affirm.

## I.     Background

¶ 2     Mother and John Michael Larkins (father) share one child, E.A.R-L. (the child), who was born in 2012. After the parties separated in 2016, the child resided primarily with mother until October 2022 when he began living primarily with father by agreement.[1] At that time, due to the distance between the parents, father changed the child's school enrollment to a school closer to his residence.

¶ 3     In April 2024, mother and father separately petitioned the district court for an allocation of parental responsibilities. Following a dispute between the parents regarding the child's school enrollment, the court ordered the child to begin the 2024/2025 school year in mother's school district. But after a temporary orders hearing less than three weeks later, the court

---

[1] The parties dispute whether they intended the move to be temporary or long-term.

1

ordered the child to be reenrolled in the school associated with father's residence.

¶ 4    The district court then appointed a child and family investigator (CFI) and scheduled a permanent orders hearing. Father, mother, and the CFI testified at the hearing. Among other things, mother requested sole medical and educational decision-making responsibility and primary residential care during the school year as recommended by the CFI. Father requested an allocation of joint decision-making responsibility and that the child remain primarily with him during the school year.

¶ 5    After considering the testimony, admitted exhibits (including the CFI report), relevant factors under section 14-10-124(1.5), C.R.S. 2025, and the allegations of domestic violence, the district court designated father the primary residential parent during the school year, allocated the first, second, fourth, and fifth weekends during the school year to mother, and equally divided summer parenting time between the parents. The court also ordered joint decision-making responsibility for all major decisions, including educational and medical decisions.

¶ 6    Mother filed a motion to amend the permanent orders under C.R.C.P. 59, which the court denied.

## II.    Standard of Review and Applicable Law

¶ 7    The district court has broad discretion over the allocation of parental responsibilities, and we will not disturb its ruling absent an abuse of that discretion. *In re Marriage of Collins*, 2023 COA 116M, ¶ 8; *In re Marriage of Morgan*, 2018 COA 116M, ¶¶ 23, 26. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or based on a misapplication of the law. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45. Under this deferential standard, the question is not whether we would have reached the same result but, rather, whether the district court's decision "fell within a range of reasonable options." *Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 74 (citation omitted). Thus, we exercise every presumption in favor of upholding the district court's best interests decision and will affirm the decision when it has record support. *See Collins*, ¶ 8; *Morgan*, ¶ 26. We review the district court's factual findings for clear error, meaning that we will not disturb the findings unless they lack any support in the record. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

¶ 8    When allocating parenting time and decision-making responsibility, the court must focus on the child's best interests, giving paramount consideration to the child's safety, needs, and physical, mental, and emotional conditions.  *See* §§ 14-10-123.4(1)(a), 14-10-124(1.5), (1.7), C.R.S. 2025; *Collins*, ¶ 7.  In making its determination, the court considers all relevant factors, including the best interests factors identified in section 14-10-124(1.5)(a) and (b).  *See Collins*, ¶ 7; *Morgan*, ¶ 21.  But the court need not make express findings on each of the factors if the record reflects that the court considered the "pertinent factors."  *People in Interest of A.M.K.*, 68 P.3d 563, 565-66 (Colo. App. 2003).  The district court's "[f]indings must be sufficiently explicit . . . to give the reviewing court a clear understanding of the basis of the order."  *Pawelec*, ¶ 44.

### III.   Allocation of Parenting Time

¶ 9    Mother contends that the district court erred by allowing the child to reside primarily with father during the school year. Specifically, mother contends that several of the court's factual findings lack record support and, even assuming record support,

4

the court's findings fail to adequately establish that the parenting time order was in the child's best interests. We disagree.

A. The Court's Factual Findings Do Not Lack Record Support

¶ 10    After the court recited the applicable law, it considered the section 14-10-124 best interests factors. As a threshold matter, the court found that the physical locations of the parties prevented an equal parenting time schedule, a finding mother does not dispute. Thus, the court had to designate one of the parents as the primary residential parent during the school year. To that end, the court made the following additional factual findings.

- Father had a "remote history of abuse in the form of one incident of physical intimidation" and a more recent history of verbal abuse and coercive control.

- Father's abuse was not "child focused or triggered."

- The child was "mature enough to be heard" and his wishes to continue attending the same school and remain primarily in father's home during the school year were uninfluenced by others and "reasoned for his age."

- The child had positive interactions with both parents, appreciated the important people in their lives, and

5

enjoyed activities with father even though they centered around father's interests.

- The child was well adjusted to both homes and emotionally connected to his school and friends.

- Both parents struggled to encourage the sharing of love, affection, and contact between the child and the other parent.

- Both parents demonstrated a past pattern of involvement with the child reflecting a system of time commitment to the child.

- Both parents struggled to place the child's needs ahead of their own.

*See* § 14-10-124(1.5)(a)(I)-(XI).

¶ 11 Following these findings, the court determined that it was in the child's best interests to allocate majority school-year parenting time to father.

¶ 12 Mother asserts that several of the court's factual findings were clearly erroneous based on a lack of record support.

¶ 13 First, mother asserts that the court erred by failing to find that father committed acts of child abuse or neglect. She says that,

6

under section 14-10-124(1.5)(a)(III.5), the court was required to "specifically consider" the CFI's allegations that father engaged in emotional abuse and educational neglect of the child. True, the CFI alleged that father (1) engaged in coercive control by asking the child what he did and where he went with mother; (2) emotionally abused the child by telling him about events or activities he could not attend with father because they occurred during mother's parenting time, specifically a camping trip in July 2024; and (3) educationally neglected the child by allowing his grades to decline. But the court's order reflects that it specifically considered these allegations, along with other evidence, before finding that father's history of abuse was not child focused. To the extent mother argues that the district erred by not agreeing with the CFI's allegations of abuse and neglect, the court was not required to do so. *See In re Marriage of Chester*, 907 P.2d 726, 731 (Colo. App. 1995) ("[R]ecommendations made by evaluators appointed in custody matters are merely suggestions to the trial court.").

¶ 14    Second, mother contends that the district court erred by considering the child's wishes, because (1) it applied the incorrect statutory standard and (2) there was no evidence that his

7

preferences were independent.  Section 14-10-124(1.5)(a)(II) allows a court to consider "[t]he wishes of the child if he or she is sufficiently mature to express reasoned and independent preferences as to the parenting time schedule."  The court found that the child was "emotionally connected to his current school and his friends" and, although "the CFI seem[ed] to discount the basis for the child's wanting to stay in his own school, given the child's age, and the importance of friends and school life at that age," the court found "the child's current wishes to be reasoned for his age."

¶ 15     According to mother, before the court could consider the child's preferences, it had to find that those preferences were "mature" and "reasonable in general," rather than "reasonable for [the child's] age."  But the statute does not say that.  Under subsection (1.5)(a)(II), if a child is mature enough to form a nonarbitrary (i.e., reasoned) and uninfluenced (i.e., independent) opinion about his living situation, the court may consider that opinion.

¶ 16     Here, the court found that the child was sufficiently mature to be heard on the issue and that he had formed a reasoned and independent age-appropriate opinion — in other words, reasonable

for his age.  The statute does not require anything more.  That the CFI disagreed with the child's opinion, because, in her view, it did not account for all the relevant circumstances, does not mean the court erred by finding the child's preference was "reasoned" and reasonable.  Furthermore, the record shows that the court considered and made findings on each relevant factor; it did not simply rely on the child's wishes.  *See In re Marriage of Ciesluk,* 113 P.3d 135, 147 (Colo. 2005) ("[I]t is incumbent upon the trial court to consider all the relevant factors to determine what arrangement will serve the child's best interests.").  And based on the CFI's expressed belief that the child had not been coached, the court's finding that his wishes were independent was supported by the record.

¶ 17     Third, mother asserts that the district court's finding that the child enjoyed sharing father's interest in his car club "was not supported by competent evidence in the record beyond [f]ather's self-serving testimony."  But father's testimony *is* competent evidence to support the factual finding.  *See, e.g.,* 32A C.J.S. *Evidence* § 1585 (2026) ("In civil cases, the testimony of a single witness ordinarily is sufficient to establish any fact . . . even though the witness is a party or interested in the action.").  Moreover, the

CFI testified that the child "enjoy[ed] going with father to his car club events."

¶ 18    Finally, contrary to mother's assertions, the court's findings that she struggled to encourage the sharing of love and affection between the child and father and to put the child's needs ahead of her own are supported by the record. Specifically, the CFI testified that mother withheld the child from father during the summer of 2024 and the child described not liking when mother called father "bad names." The CFI also reported that, according to the child's former therapist, the child did not feel heard by either parent. Based on her investigation, the CFI opined that mother struggled to encourage the child's relationship with father.

¶ 19    In sum, because the district court's findings have record support, we will not disturb them. *Id.*

### B.    The Court Did Not Abuse Its Discretion When It Allocated Majority School-Year Parenting Time To Father

¶ 20    Mother next asserts that the district court's allocation of school-year parenting time is "entirely inconsistent" with "the factual findings and credibility determinations cited in the permanent orders" and is not in the child's best interests. In

support, mother highlights that (1) the CFI recommended that mother be the primary residential parent during the school year and (2) the court found that the child's grades and school attendance declined during his time in father's care.

¶ 21     However, it was for the district court, not us, to weigh the conflicting evidence and the relevant factors. *See Thorburn,* ¶ 49; *see also In re Marriage of Rahn,* 914 P.2d 463, 465 (Colo. App. 1995) (explaining that when the district court resolves the conflicting evidence in one party's favor, we may not reweigh that evidence or substitute our judgment for that of the district court); *In re Marriage of Udis,* 780 P.2d 499, 504 (Colo. 1989) (an appellate court may presume that the district court considered all of the evidence admitted). After doing so, the court determined that it was in the child's best interests to remain primarily with father during the school year. Implicit in that conclusion is the court's determination that, despite its negative findings regarding the child's grades and attendance, the factors weighed in favor of its allocation of parenting time. *See In re Parental Responsibilities Concerning S.Z.S.,* 2022 COA 105, ¶ 21 (recognizing that a court's findings may be implicit in its ruling). That implicit finding along

with the remainder of the court's findings sufficiently explained and supported the court's decision. *See Pawelec*, ¶ 44.

¶ 22 Mother notes that the court did not make any findings explaining why it deviated from the CFI's recommendation. But "[u]ltimately it is the role of the court to weigh the CFI's recommendations pursuant to the appropriate standards to determine whether they are in the children's best interests." *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1133 (Colo. 2010). And the court's findings concerning the child's best interests sufficiently explained the basis of its decision to allocate the majority of school-year parenting time to father.

¶ 23 For these reasons, we cannot say that the district court's allocation of parenting time exceeded its broad discretion. *See Pawelec*, ¶ 45.

IV. Allocation of Decision-Making Responsibilities

¶ 24 Mother contends that the district court did not comply with the statutory requirements by allocating joint medical and educational decision-making responsibility over her objection as a victim of domestic violence. We disagree.

## A.     Applicable Law

¶ 25     When the district court finds by a preponderance of the evidence that a party has committed domestic violence, it may not allocate joint decision-making responsibility over the other party's objection "unless the court finds that there is credible evidence of the ability of the parties to make decisions cooperatively in the best interest of the child in a manner that is safe for the abused party and the child."  § 14-10-124(4)(a)(II)(A).

## B.     Analysis

¶ 26     In allocating joint decision-making responsibility, the district court acknowledged father's history of abuse and coercive control. Nonetheless, it found that the parties had previously been able to make joint decisions in the child's best interests.  And it noted that mother had requested joint decision-making responsibility with father on a wide range of issues, including extracurricular activities, religious upbringing, and discipline.  Accordingly, the court determined that mother and father could continue to cooperatively make decisions in the best interest of the child as long as certain safeguards were implemented to protect the parties' and the child's safety.  The court ordered the parties to strictly limit

13

communication to parenting issues, communicate only in writing via Talking Parents, and follow a procedure for decision-making including response deadlines.

¶ 27 Mother contends that the court erred by determining that the parties could make *all* decisions jointly merely because they could make *some* decisions jointly. But we agree with the district court that mother's acknowledgement that the parties could make decisions jointly in the best interests of the child about certain important issues supports a finding that the parties could make other decisions jointly as well. And, as detailed above, the court's analysis did not end there. The court also found that its specific orders governing the method, content, and timing of communications would minimize unnecessary communication, and protect the safety of all parties. And mother does not dispute those findings.

¶ 28 Because the record reflects that the court carefully considered the evidence and issued orders concerning the parties' ability to make decisions cooperatively in a safe manner, we discern no abuse of discretion.

## V.    Disposition

¶ 29    The judgment is affirmed.

JUDGE DUNN and JUDGE MOULTRIE concur.